(44 South. 117.)

No. 16,423.

HEAD et al. v. HOWCOTT LAND CO.,
Limited.

(June 10, 1907.)

1. TAXATION—PRESCRIPTION—HOLDER OF TAX
DEED—LACHES.

Where a purchaser at tax sale allows
many years to elapse without asserting his title
or demanding to be put in possession of the
property adjudicated to him, during which
period the taxes are paid by other persons, who
acquire, in good faith, from the original owner
what they believe to be a right of ownership
in the property, and who exercise, with respect
thereto, such right of possession as the nature
of the property and their own convenience per-
mits, such possession, whether it be of a char-
acter and duration to afford a basis for the
plea of prescription acquirendi causa or not,
may be sufficient to prevent the running of any
prescription in favor of the tax title.

2. SAME—ASSESSMENT.

Distinct pieces of property belonging to
different persons, between whom there is no
privity of estate, cannot legally be included in
the same assessment in the name of one of the
owners, nor can the property of such owner
be sold for the tax so assessed confusedly with
that of the others.

[Ed. Note.—For cases in point, see Cent. Dig.
vol. 45, Taxation, §§ 574, 575.]

(Syllabus by the Court.)

Appeal from Third Judicial District Court,
Parish of Bienville; James Edward Moore,
Judge.

Action by J. D. Head and others against
the Howcott Land Company, Limited. Judg-
ment for defendant, and plaintiffs appeal.
Affirmed.

John Crawford Theus, for appellants.
Isaac Dickson Wall, Jr., for appellee.

### Statement of the Case.

MONROE, J. The purpose of this suit is
to determine the question of the ownership
of the lands described in the petition. Plain-
tiffs claim under a sale made July 5, 1881,
by the tax collector of the parish of Bienville
for taxes of 1878 and 1880, assessed to Wm.
Bogel, but James D. Head, the adjudicatee,
testifies that he has never been in the ac-
tual possession of, has never paid any taxes
on, the lands since his purchase, and never
made any attempt to disturb the possession
of Bogel prior to the institution of this suit.
He also testifies that he never heard that
Bogel or any one else was in possession.
On the other hand, William Bogel bought
certain lands, including those here claim-
ed from the succession of Hyams, by two
acts, of date July 15, 1876, and May 12,
1877, respectively, and on August 1, 1891,
sold most of them to W. H. Howcott, by
whom on October 25, 1893, the tracts so pur-
chased by him were sold to defendant. It
is admitted that plaintiff, J. D. Head, was
married in 1878, that his coplaintiff, Linden
C. Head, is the only child of the marriage,
that he was born in 1880, and that he is
the sole heir of his mother; and it is undis-
puted that the title relied on by plaintiff was
acquired under the régime of the community.
It is also admitted that defendant and its
author have paid the taxes on the lands in
dispute since the date of their purchase from
Bogel in 1891; and it is shown that Howcott
caused said lands, or a portion of them, to
be surveyed in October, 1891, and employed
an agent to look after them; that defendant,
from the date of its acquisition, or shortly
afterwards, has been represented by a local
agent, whose duty it has been to protect the
lands from trespassers and maintain de-
fendant's right of possession therein; and
that the agents so employed have discharged
that duty by notifying trespassers, and, in
several instances, bringing suits against
them. Beyond this, defendant's president
and vendor testifies that in 1892, before he
sold the lands to defendant, he personally
went on them with a surveyor and timber
estimator, and took possession to the extent
of posting notices upon the corners, warning
the public against trespassing. We gather
from the testimony that the lands are main-
ly wild marsh and woodland; and, though it

is said that two persons (the one a negro) have of late been cultivating some of them (without apparently accounting to any one), we infer that, upon the whole, they have not been regarded as desirable for such use, and that their principal value lies in the timber.

The lands claimed by plaintiffs include the following, to which defendant exhibits no title, to wit: W. ½ of N. W. ¼ of section 15, township 18 N., range 7 W.

The lands adjudicated to plaintiff (J. D. Head) under the assessments for 1878 and 1880, against Wm. Bogel, include the following, to which Bogel had no title, to wit: N. W. ¼ of S. E. ¼ of section 15, township 18 N., range 7 W; N. W. ¼ of S. W. ¼ of section 11; W. ½ of S. E. ¼ of section 34, township 18 N., range 8 W.

The following lands, included in the sale to Head and assessed to Bogel, were assessed for the year 1880 to other persons as well, to wit: W. ½ of S. E. ¼ of section 9 (assessed to John Heflin); N. E. ¼ of N. W. ¼ of section 12 (assessed to unknown owner); W. ½ of N. W. ¼ of section 15 (assessed to Mrs. M. E. Sullivan). The assessment rolls show payment by Bogel of the taxes of 1881, 1882, 1883, 1886, 1887, 1888, and the roll of 1885 does not indicate delinquency for that year. The roll of 1884 is missing. The property appears to have been sold for the taxes of 1889, and redeemed by Bogel, and the recorder certifies that he finds no assessment in the name of Bogel for the year of 1890. As to the taxes for the years for which the property was sold, it is shown that the tax of 1878 was reported delinquent; but no such report as to the tax for 1880 was found in the auditor's office. In the sale (from Bogel to Howcott of August 1, 1891) the notary recites that the taxes up to and including those of 1890 are paid "by reference to certificate of register of conveyances and recorder of mortgages," and, as has been stated, it is admitted that

the taxes since then have been paid by defendant or its author. The notary's certificate would cover a payment by a tax purchaser as well as by the owner of the property, and is therefore not conclusive that the payment did not, in some instances, result from the sale of the property for the tax, which was paid in that way. Upon the whole, we do not find the evidence adduced to show payment of the taxes of 1878 and 1880 sufficiently strong to outweigh the record and the presumption as to the regularity of the proceedings to enforce such payment.

### Opinion.

In addition to the plea of payment (of the taxes for which the property was sold), defendant relied upon the prescription of 10 years, acquirendi causa, and upon the alleged invalidity of the title set up by plaintiffs, resulting from the facts, that portions of the land sold were separately assessed to different persons for the taxes for which the sale was made, and, upon the other hand, that tracts belonging to different persons were assessed and sold in globo for the same tax. Plaintiffs plead various terms of prescription in defense of their title.

We are of opinion that where, as in this case, a tax purchaser, after acquiring his title, makes no effort to take, or have himself put in, possession of the property purchased by him for 22 years, and during that long period asserts no claim to the property, pays no taxes on it, and allows third persons to acquire and exercise, in good faith, what they believe to be rights of ownership and possession with regard to it, such title remains open to any objection which might originally have been urged against it. In the case of Ashley Co. v. Bradford, 109 La. 641, 33 South. 634, the owners of the property removed from "the state, left no agent, practically abandoned the land, ceased to look after it, and, for nearly 20 years, neith-

er returned it for assessment nor paid, or offered to pay, taxes on it," and this court ruled that the holder of the tax title who followed up his purchase by paying the taxes on the property as they fell due acquired a civil possession sufficient to sustain the prescription established by the Constitution for the protection of such titles.

In Terry v. Heisen, 115 La. 1072, 40 South. 461, it appeared that neither the owner nor any one else had been in possession of the property for 40 years prior to the tax sale, that no taxes had been paid during that time, and that, thereafter the taxes were paid by the tax purchaser, and it was held, as in the case of Ashley Co. v. Bradford, that the tax title was protected by the prescription established by the Constitution. In the instant case, the situation is reversed. The holder of the tax title, for more than 20 years, made no attempt to take possession of the property purchased by him, and neither returned it for assessment nor offered to pay the taxes which fell due upon it, and those taxes in the meanwhile were paid by others, who believed themselves to be the owners, and who exercised such rights of ownership and possession as the nature of the property and their own convenience. permitted. Whether their possession has been of such character or duration, or both, as to authorize the maintenance of defendant's plea of prescription, acquirendi causa, is a question which we consider it unnecessary to decide, but we are clearly of opinion that it has been sufficient for the purposes of the immediate question now under consideration. Defendant's objection of dual assessment would be good if it were shown that the tax had been paid under either, or that the property had been sold under an assessment other than that of which the law expected the owner to take notice. Shelly et al. v. Friedrichs, 117 La. 679, 42 South. 218. The judge a quo (as we are informed through the briefs of counsel) rejected plaintiffs' demand, on the ground that the property of Bogel had been assessed and sold confusedly with the property of other persons, and we concur with him that the sale was null for that reason. Distinct pieces of property, belonging to different persons, between whom there is no privity of estate, cannot legally be included in the same assessment in the name of one of the owners; nor can the property of such owner be sold for the tax so assessed confusedly with that of the others. Howcott & Ransdell v. Board, etc., 46 La. Ann. 322, 14 South. 848; George v. Cole, 109 La. 817, 33 South. 784; Pitre v. Haas, 110 La. 176, 34 South. 361.

The judgment appealed from is accordingly affirmed.