"As to the complaint that the subpœna duces tecum against the plaintiff to produce certain books and papers should have been taken for confessed, it is sufficient to state that plaintiff, in answer to the subpœna, made a full disclosure and apparently produced all data in its possession.

"The judgment of the lower court was in favor of the plaintiff, and, finding no error therein, the said judgment is accordingly affirmed."

We find no error in this judgment. It is therefore affirmed, at the cost of the relator.

=====

(58 South. 574.)

No. 18,839.

HOWCOTT v. PETIT.

(April 22, 1912. Rehearing Denied May 20, 1912.)

*(Syllabus by the Court.)*

1. DISMISSAL AND NONSUIT (§ 60*)—ABANDONMENT OF ACTION—PLEA.

    Where a plaintiff takes formal and necessary steps in his suit within five years of the filing of a plea of abandonment, the plea will not be sustained.

    [Ed. Note.—For other cases, see Dismissal and Nonsuit, Cent. Dig. §§ 140–152; Dec. Dig. § 60.*]

2. LIMITATION OF ACTIONS (§ 19*)—LIMITATIONS APPLICABLE—ACTIONS RELATING TO REAL PROPERTY—PRESCRIPTION.

    While there may be a question as to whether the present action is one to set aside a tax sale, or is petitory, there is no question about the fact that it is not a revocatory action, as the action is not brought by a creditor, but by one claiming title; and therefore the prescription of one year does not apply.

    [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 73–85; Dec. Dig. § 19.*]

3. TAXATION (§ 733*)—TAX TITLES—VALIDITY.

    Where the adjudicatee under Act No. 82 of 1884 fails to pay the necessary taxes, he has failed to comply with the conditions of the adjudication, and does not acquire title to the property; and the issuance by the tax collector, years afterwards, of a tax deed did not cure the radical nullity arising from his failure to pay the taxes.

    [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1469; Dec. Dig. § 733.*]

4. TAXATION (§ 805*)—TAX TITLE—ACTION—PRESCRIPTION—CONSTITUTIONAL PROVISION.

    The prescription of three years, created by the Constitution, does not apply to a tax deed that is radically null ab initio.

    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1593–1597; Dec. Dig. § 805.*]

5. TAXATION (§ 679*) — TAX TITLES — RIGHTS OF PARTIES.

    As all the taxes on the property have been paid, and there are no taxes due, the state has no interest in the property; and it will not avail the defendant, under the circumstances, to allege that plaintiff has no right of action, because the title is in the state.

    [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1361, 1362; Dec. Dig. § 679.*]

6. DEEDS (§ 65*)—ACCEPTANCE—ACTS CONSTITUTING.

    Where one refused to accept real estate, but subsequently conveys it to another, he in effect accepts the property by conveying it.

    [Ed. Note.—For other cases, see Deeds, Cent. Dig. § 144; Dec. Dig. § 65.*]

Provosty, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; Thos. C. W. Ellis, Judge.

Action by W. H. Howcott against George S. Petit. On conveyance of the property by defendant, John J. Paquette was substituted as defendant. From a judgment for plaintiff, defendant Paquette appeals. Affirmed.

See, also, 106 La. 530, 31 South. 61.

J. Zach Spearing, Geo. Montgomery, and A. Guilbault, for appellant. Richardson & Soule, W. W. Wall, and Hall, Monroe & Lemann, for appellee.

BREAUX, C. J. Plaintiff brought this suit to have recognized a title he claims to a square of ground (40) in the former Fauberg-Greenboro, bounded by Wall, Esther,

Wall, and Foucher street, near Audubon Park, dating from the 18th day of May, 1896, on which date, he avers, he bought from Henry C. Dibble. He averred that George S. Petit, the defendant, was in possession of the property under a fictitious title given him by James C. Molyneaux, dated May 23, 1896. Plaintiff specially attacks this title, and avers that Molyneaux himself, in open court, admitted, in the presence of the attorney, Jos. D. Taylor, who was also one of those who claimed an interest adverse to that of plaintiff, that the property was not his, but belonged to Jos. D. Taylor.

Taylor was defendant in another suit, brought for the same property, which he defended and lost in the district court, and which was affirmed by the Court of Appeals.

The contention of plaintiff is that after this judgment had been rendered against Taylor, the defendant, he did not surrender the property, but claimed under another title anterior in date to the title which was decreed null and void by the Court of Appeals; that he held and controlled the title at the time, but for some reason he failed to set it up.

However, be that as it may, the charge is that this title of anterior date, as before stated, was brought forth only for the purpose of evading the effect of the judgment rendered against Jos. D. Taylor. Subsequently, prompted by the same purpose, he made title of the property to Molyneaux, and Molyneaux to George S. Petit, not third persons as plaintiff contends, but parties seeking to avoid a judgment duly rendered.

An exception of no cause of action was filed by defendant in the district court and overruled.

The court held, in overruling the exception, in substance, that it was evident "in plaintiff's allegation that there was an outstanding tax title," made under Act No. 82 of 1884, for taxes of different years subsequent to that date. That, as plaintiff had not attacked this outstanding title, and had not sought to have it decreed null, but, on the contrary, appeared to the court to have alleged that there was such a title, plaintiff could not be heard to question the sale of Molyneaux, however simulated and null, as, by the outstanding tax title, the property remained in the state.

On appeal to this court, a different view was taken, and the judgment referred to, rendered by the district court, was reversed for reasons stated in the opinion, and the case was remanded to be proceeded with anew in the lower court. Howcott v. Petit, 106 La. 530, 31 South. 61.

After the case had been remanded, plaintiff filed two supplemental and amended petitions. In the first, he alleged, in substance, that George S. Petit, the defendant, caused to be executed an asserted act of sale to John J. Paquette, for the untrue consideration of $500 cash and $2,000 in mortgage notes. The contention of plaintiff is that the sale was null. Paquette acquired no right or title, as George S. Petit had no right or title to transfer, as he held under a fictitious title from Molyneaux, the party before named; that this title also was made pending the present suit, and the purpose was to evade the effect of the judgment which had been previously obtained, as above stated. Paquette was made a party to the suit in accordance with the prayer of the petition.

In the other supplemental and amended petition, plaintiff attacked the outstanding title, referred to by the judge a quo in rendering judgment in the district court, which was afterward reversed, as before mentioned. The grounds of that attack on Molyneaux's asserted title were that he did not pay the state and city taxes for the years 1880 to 1889, inclusive, due at the date of adjudication, which was made, as before

stated, under Act No. 82 of 1884, and that, in consequence of failure to pay these taxes, he acquired no title; and, having acquired no title, he could not convey one either to Petit or to Paquette.

Plaintiff further alleged that the property was sold to the city of New Orleans in 1889 for taxes from 1880 to 1884, inclusive, assessed in the name of H. C. Dibble; and that it was again sold in 1892 for the taxes of 1885 and 1887, inclusive, assessed in the name of Taylor.

Plaintiff's claim is that on the 10th day of June, 1903, he acquired the city's rights as adjudicatee at tax sale, as just mentioned.

Paquette, having been made defendant, as before mentioned, in an exception pleaded prescription of one year, and also pleaded that plaintiff had no right or cause of action, and pleaded misjoinder. In a separate exception, he pleaded that plaintiff had abandoned his suit. This exception was overruled.

We will state, before proceeding further, that Paquette's connection with this litigation began on the 16th day of March, 1903.

In his answer, Paquette alleged that he purchased from George S. Petit, and that by virtue of the sale to him he acquired a good title; that he was in good faith, without notice; that Petit was in possession and gave him possession under the sale; and that he immediately thereafter went into possession of the property.

On the trial, it appeared that the act of sale made in 1889 to Molyneaux was not recorded until 1896. In the tax adjudication, it appeared that he had assumed payment of the taxes to the state and city for the year 1880 and years subsequent to and including the year 1889. There is also a copy of a sale in evidence, made by the state to Joseph D. Taylor. It also appears by certain receipts filed in evidence that plaintiff paid taxes on the property for the years 1884, 1885, 1886, and 1887. He also paid certain taxes, but did not pay all the taxes due.

At defendant's instance, a number of deeds were admitted in evidence, certificates and different documentary evidence. Proved that George S. Petit sold to Paquette on February 21, 1899.

Paquette was sworn as a witness, and said that he knew of no outstanding title claims against the property. He held a mortgage on the property, executed in his favor by Taylor, who introduced him to Petit.

Petit, it seems, was a man of means, and had implicit confidence in Taylor, who acted as agent, and whose finding in regard to the title he accepted as correct. He testified that he was in possession of the property, and goes on and gives some details of his possession.

It was not a regular uninterrupted possession; but, doubtless, he was in possession at times and exercised the asserted rights of an owner.

It will be borne in mind that the original petition in the suit against George S. Petit, vendor to Paquette, was filed in 1898. In view of the delays between the day that Paquette was made a party to this suit in 1903 to the date that a motion was filed by defendant for the dismissal of the suit on the ground of abandonment, we at this time take up this motion to dismiss to determine whether or not it should be sustained. If it were sustainable, there would be no necessity for further consideration of the issues. In order to determine this question, we will have to go back to the records of the suit. By them, it is proven, that on March 16, 1903, as before mentioned, the supplemental petition was filed, making Paquette a party. As well mention here that on February 21, 1899, Petit sold the property to Paquette for

a pretended consideration of $500 and $2,000 in mortgage notes by act passed before J. D. Taylor, notary.

Petit had no title, save the paper title which he held from Molyneaux, who ostensibly held from Taylor; but the ownership was one of accommodation. Plaintiff charges that the sales were made in fraud, pending the present suit.

The foregoing shows the time from which the defendant dates that alleged abandonment, and to some extent it sets up the issues which were presented.

[1] Now, in following up these issues, it appears that on March 21, 1903, Paquette filed an exception to plaintiff's action, which has been heretofore referred to. This was certainly a step which had the effect of interrupting delays in the proceedings. On July 3d of the same year, plaintiff filed another supplemental and amended petition, alleging that he had redeemed the property from the city, and was holding under all the rights which he had originally and under the redemption certificate, which he alleged he had. On the 19th day of October, plaintiff, again prosecuting his case moved to fix the exceptions pending, and on October 30th, in compliance with the court's order, a bond was furnished for cost.

In 1905 plaintiff filed a motion to have a curator ad hoc appointed; and again the same year plaintiff moved to have the case placed on the docket, in order to have it fixed for trial. In 1906 motions were made for a commission to take testimony. A rule was filed on J. D. Taylor in that year, which was made absolute. In October, 1909, a motion was made to fix the exceptions.

These different steps preclude the possibility of arriving at the conclusion that plaintiff had abandoned his action. The motions and other papers filed were sufficient to keep the suits alive.

Alleged abandonment of suit:

The steps taken were not only formal, but actually necessary in the course of the proceedings. The suit did not remain on the docket as a mere pending cause. We have read Raymond v. Conery, 50 La. Ann. 155, 23 South. 208, and Lockhart v. Lockhart, 113 La. 872, 37 South. 860. In the former case, 17 years had elapsed when plaintiff awoke to the necessity of actively prosecuting his cause. Of course, there was abandonment. In the latter case, it was held that a suit is considered abandoned if no steps be taken during 5 years; and no steps at all in that case had been taken.

[6] Defendant challenges the plaintiff's right to prosecute the suit, on the ground that he has not proven that he is the owner of the H. C. Dibble title to the land. Defendant seeks to maintain that position by arguing that the asserted sale, to wit, Robert to Howcott, was not a sale but a refusal on the part of Robert to accept the sale; and that it is res inter alios acta.

We are of opinion that there was an absolute sale or transfer to Robert, which he declined to accept, but transferred whatever right or authority he had to the plaintiff and this with the consent of H. C. Dibble and his children, heirs of his wife, deceased.

The following excerpt is substantially correct:

"Sale, Dibble to N. R. Roberts, May 18, 1896, an act dated Sept. 29, 1898. N. R. Robert to W. H. Howcott, and certificate of registry thereon."

There is other evidence conclusively showing that the property was conveyed to plaintiff; Robert in effect accepted his deed by conveying the property to Howcott.

[2] One year's prescription:

The defendant interposes that prescription. There may be a difference of opinion as to whether his action is petitory, or a special action to set aside a tax sale. There can be none in regard to the revocatory ac-

tion. It is not that action. That action is brought by creditors of the vendor. Here the question is exclusively one of title; the right of resolution is not involved.

[3] Molyneaux tax deed:

Plaintiff attacks this act as being null and void. It consists of an adjudication made by the state to Molyneaux on the 7th day of November, 1899. The property was sold to this adjudicatee under Act No. 82 of 1884. Plaintiff bound himself to pay taxes due on the property for the years 1880 and subsequent, but failed to pay any of the taxes, and left them all unpaid to the year 1903. This, according to our jurisprudence, was equivalent to a failure of complying with the adjudication, and did not invest him with the ownership.

The leading case upon the subject is Martinez v. Tax Collector, 42 La. Ann. 677, 7 South. 796. The court held that, the adjudicatee having failed to pay the taxes in compliance with his obligation, no title passed to him. It follows that the act upon which defendant relies in this case cannot serve him as a foundation for the least right.

The decision was reaffirmed in Remick v. Lang, 47 La. Ann. 914, 17 South. 461.

Molyneaux, on the 3d day of March, 1896, undertook the difficult task, having acquired no right, to convey the property to Petit. Although Molyneaux had failed to secure a title, the tax collector, years afterward, issued a tax deed to him. This was the merest nullity; it could amount to nothing. He had no authority in law to issue such a deed. A similar point was decided in Remick v. Lang, 47 La. Ann. 927, 17 South. 461, in this: That it was held in the last-cited case that, as the original title was null, there could be no redemption of any kind.

The day after the tax collector issued this merest paper title to Molyneaux, he sold to Petit. His act of transfer contains recitals showing that he did not pay the taxes. On the face of the deed of sale, its nullity is made to appear by the recitals of failure to pay in accordance with his obligations to pay, in order to obtain a valid title.

This brings us to a consideration of the Paquette title, acquired by purchase from Petit on the 21st day of February, 1889, before Taylor, notary, for $2,500, $500 cash and a $2,000 mortgage note, due by Taylor to Paquette, the buyer, which was taken as a consideration.

Paquette, purchaser,. gave himself very little concern about the title. It was another instance of buying a pig in a pog.

He really was not certain whether his title was in his vendor or not, and knew nothing of the Molyneaux title, he testified. He left the whole examination to his notary, Taylor, who had been connected with the litigation, but said nothing to him, he says, about the illegal title. The result is that Paquette acquired no right.

[4] The prescription of three years:

The defense takes the position that the purchaser was in good faith under a title. The position urged is not sustained by the evidence. Prior to the date, in 1903, that the suit was brought, Paquette had not been in possession. One not in possession does not acquire under tax deeds, as one who is in possession. Head v. Howcott, 119 La. 331, 44 South. 117. It was only after he was made a party to the suit that he was in actual possession. The lot prior to that time, was vacant.

We have seen that the title was entirely null and void. For that reason, it was not protected by the three years' prescription of article 233 of the Constitution.

This court held:

"The purchaser, not having complied with his bid, is not in good faith, and his claim is not cured by the prescription of three years." Marmion v. McPeak, 51 La. Ann. 1631, 26 South. 376.

Molyneaux's title was Taylor's, as testified to by the former; and Taylor's and

Paquette's rights were those which Molyneaux had acquired.

The syllabus in Babin's Heirs, v. Daspit, 120 La. 755, 45 South. 597, is in point, to wit:

"A fraudulent tax title will not serve as the basis of the constitutional prescription of three years."

As in the cited case, the title here is a mere sham, entirely beyond the curative effect of the prescription of three years.

If Paquette had consulted the records at all, he would have seen that they teemed with illegalities, and that it was utterly impossible for him to acquire a title. He must have known that he was buying a tax title.

[5] The rights of the state and the city:

We will next consider the tax title from defendant's point of view, which was that the property rested in the state and city, because it was assessed in the name of Jos. D. Taylor in the year 1895, and, because, by act passed before him as notary, it appeared to have been adjudicated to the state of Louisiana, and that, as contended by defendant, it is at this time owned by the state. Prior to that time, it had been adjudicated to Taylor; but in a suit by Henry C. Dibble against Taylor the adjudication was annulled. The insistence of defendant is that it is in the name of the state, and that, in consequence, the defendant is without right to the property.

That would be true if there were any taxes due the state; but the state, it appears, is entirely paid, and has no further claim on the property.

Whatever right Taylor had became plaintiff's by the judgment against Taylor in favor of H. C. Dibble, in which it was decreed that, contradictorily with Taylor as defendant, the former (Dibble) was the owner of the ground in question. The right

130 LA.—26

of Dibble as represented by Howcott, the plaintiff.

In addition to the foregoing, the property assessed in the name of H. C. Dibble was adjudicated to the state in 1883. The state collected on the assessment and after the adjudication. The following decisions regarding the collection of taxes by the state on property forfeited are directly in point: Booksh v. Wilbert, 115 La. 351, 39 South. 9; Gauthreaux v. Theriot, 121 La. 871, 46 South. 892, 123 Am. St. Rep. 328.

Moreover, the predecessor of defendant, not having, for a number of years, had his title recorded, sales having been made since such a failure to record, the prescription of three years can be of no avail under article 233 of the Constitution. Babin v. Daspit, 120 La. 755, 45 South. 597; Head v. Howcott, 119 La. 331, 44 South. 117.

The fact that plaintiff failed to have his suit properly filed and registered, as required by Act No. 134 of 1898, did not have the effect of investing the defendant with good title. Want of notice of the pending of the suit did not have a negative effect, as defendant had no title.

The judgment on reconventional demand is correct. Plaintiff urged no objection to this part of defendant's demand.

The judgment is affirmed.

PROVOSTY, J., dissents.