DOMENGEAUX, Judge.
Plaintiff-appellee, Susie Wilson Jamison, filed a “Petition to Remove Cloud From Title” to a one hundred sixty acre tract in Rapides Parish. The tract, which the plaintiff inherited in 1920, was sold in 1953 for delinquent taxes and was adjudicated to the plaintiff’s husband, William H. Jami-son. Named defendants in this suit are the Sheriff of Rapides Parish, Grady L. Kelly, Jr., and three of the plaintiff’s eight children, John W. Jamison, Earl B. Jamison, and Mabel Jamison Cryderman. Four of the plaintiff’s five remaining children subsequently intervened and adopted the position of their siblings, the three defendants. Two months after institution of these proceedings, the plaintiff sold the one hundred *1095 and sixty acre tract to Mr. and Mrs. Herman L. McVay, but verbally reserved the use of her home. Subsequent thereto, the McVays intervened in this suit and adopted the position of the plaintiff.
From a judgment declaring the 1953 tax sale to be invalid, the seven defendant/in-tervenor children have appealed.
Two issues are presented for our review:
(1) Has the plaintiffs claim been timely filed?
(2) Was the tax sale to Mr. Jamison valid, thus rendering the one hundred and sixty acre tract community property?
FACTS
Plaintiff, Susie Wilson Jamison, the only surviving issue of the marriage of William Wilson and Lonnie Tyson Wilson, inherited one hundred and sixty acres in Rapides Parish upon the death of her father in 1920. From 1920 until 1953, the property continued to be assessed in the name of “William Wilson Estate” as the succession of Mr. Wilson had never been opened. In 1934, at the age of 22, the plaintiff married William H. Jamison, age 52. The couple moved onto the one hundred sixty acre tract, built a home, a small store, and raised eight children. Plaintiff, Susie Wilson Jamison, continually signed a homestead exemption and/or paid the property taxes until 1952, at which time the property taxes became delinquent. Registered notice of the tax delinquency was sent to the record title owner, “William Wilson Estate”. Mrs. Jamison alleged that she never received notice of this delinquency. However, on June 15, 1953, the property was sold for nonpayment of taxes to plaintiff’s husband, William H. Jamison for $61.35, the amount of delinquent taxes. Mrs. Jam-ison testified that she learned of this sale from a friend a few days later.
Susie and William Jamison continued to live on the one hundred and sixty acre tract until William Jamison’s death in 1976. Except for a brief period during a short-lived subsequent marriage, Susie W. Jamison has remained on the property at all times. At various times, three of the Jamison children lived on and built additional homes on the property.
In January, 1985, Mrs. Jamison filed this suit to have the 1953 tax sale declared null and void. Two months later, she sold the property to Mr. and Mrs. Herman L. McVay who have intervened herein and aligned themselves with the plaintiff. Pri- or to instituting this suit, Mrs. Jamison asked each of her eight children to sign a quitclaim deed relinquishing any ownership rights they may have in the one hundred sixty acre tract. Only five of the children signed the quitclaim deed; the three children who refused are named as the original three defendants. These three children maintain that when Mr. Jamison purchased the one hundred sixty acre tract at the 1953 tax sale, the property ceased to be Mrs. Jamison’s separate property and became community property, in which they inherited an undivided one-half interest upon their father’s death in 1976. Four of the five children who did sign the quitclaim deeds have subsequently renounced these agreements and have intervened in this suit, aligning themselves with the original three defendant siblings.
The Trial Judge ruled in favor of the plaintiff and the McVays. Initially, he found that the plaintiff’s suit was timely because her continued possession of the property suspended the commencement of the five year preemptive period. Secondly, he ruled that there were no irregularities in the tax sale to render it null and void, as the Sheriff sufficiently complied with the statutory notice requirements by informing the tax debtors, “William Wilson Estate”, of the tax delinquency by registered mail and the sale was duly advertised in the local official newspaper. However, the Trial Judge found the tax sale was nonetheless invalid because, like co-owners of property, Mr. Jamison owed a duty to his wife to pay the taxes, and hence, his payment of the $61.25 operated as a payment of the taxes rather than a sale of the property.
For reasons which vary from those of the learned Trial Judge, we affirm this *1096 ruling declaring the 1953 tax sale to be invalid.
TIMELINESS OF THE PLAINTIFF’S SUIT AND VALIDITY OF THE TAX SALE
Defendants/intervenors argue that the plaintiffs suit filed thirty-two years after the tax sale should be barred by Louisiana Constitution Article VII § 25, which requires a suit to annul a tax sale be commenced within five years from the date of the recordation of the tax sale. However, we find that two exceptions to this peremptive period are applicable to this case. Initially, it is well established that this peremptive period does not commence against the tax debtor until such tax debtor no longer exercises physical or corporeal possession of the property. La.R.S. 47:2226, La.R.S. 47:2228; Childress v. Johnson, 387 So.2d 1217 (La.App. 1st Cir.), writ denied, 393 So.2d 744 (La.1980). Except for the brief period of her second marriage, Mrs. Jamison continually maintained corporeal possession of the property from the time she and her husband moved onto the property in the 1930s until she instituted this suit in 1985.
Defendants/intervenors cite Holleyman v. Garbarino, 358 So.2d 365 (La.App. 3rd Cir.), writ denied, 359 So.2d 1304 (La.1978), for the proposition that the tax debtor must have exclusive dominion over the property in order to prevent the commencement of the five year peremptive period. Defendants/intervenors argue that since both Mr. and Mrs. Jamison exercised joint control over the property after the 1953 tax sale, the five year peremptive period was not suspended.
A review of the evidence indicates that both Mr. and Mrs. Jamison equally exercised varying degrees of control over the property both before and after the 1953 tax sale. Clearly, prior to the 1953 tax sale, the property was Mrs. Jamison’s separate property. Due to the peculiar facts present in this case, such that the tax debt- or (Susie W. Jamison) was married to the purchaser (William H. Jamison), it is unreasonable to have expected Mrs. Jamison to banish her husband from the property in order to establish that she was continuing to maintain possession of her property. In this instance, the degrees of control over the property by either Mr. or Mrs. Jamison did not indicate any relinquishment of possession on the part of Mrs. Jamison. Hence, we find that the joint control over the property exercised by Mr. and Mrs. Jamison did not prevent Mrs. Jamison from establishing that she continued to maintain possession over the property, thus preventing the five year peremptive period from commencing.
Additionally, for the following reasons, we find that the tax sale was an absolute nullity which cannot be cured by the passage of a peremptive period. Hubbs v. Canova, 401 So.2d 962 (La.1981); Howcott v. Petit, 130 La. 791, 58 So. 574 (1912); Cuggy v. Zeller, 132 La. 222, 61 So. 209 (1913); Atkins v. Simpson, 28 So.2d 769 (La.App. 1st Cir.1947).
The marital regime in effect in Louisiana at the time of the 1953 tax sale, commonly termed the “Head and Master” regime, allowed the husband to exercise primary control over the community property of the spouses. Under former Civil Code article 2385 the separate property of the wife which was not administered by the wife separately and alone, was also considered to be under the management of the husband. While the Code did not expressly declare the existence of a fiduciary duty on the part of the husband in administering his wife’s separate property, we believe that the rights and privileges accorded to the husband in assuming control over his wife’s separate property also included a correlative obligation on his part to act as a prudent administrator and implicitly established a fiduciary duty prohibiting him from acting in a manner adverse to his wife’s interest. Our finding of this duty on the part of the husband is reinforced by the cause of action established in former Civil Code article 2388 which allowed a wife to sue her husband who had administered her separate property, for an accounting of the existing and consumed fruit of her separate property. This Code article rendering *1097 the husband accountable for the administration of his wife’s separate property further supports our conclusion that he had a fiduciary duty to administer her property in a non-adverse manner to his wife.
Hence, we find that Mr. Jamison’s management of his wife’s separate property should have been performed in a manner consistent with the aforementioned fudici-ary duty. As there is no evidence indicating that Mr. Jamison intended to act contrary to his duty, we conclude that by paying the amount of delinquent taxes and erroneously having the property adjudicated in his name, Mr. Jamison intended to pay the taxes on behalf of his wife. Hence, the sale naming Mr. Jamison as the purchaser of the property was null and void and the payment of the $61.35 inured to the benefit of Mrs. Jamison and constituted payment of her delinquent property taxes. Cf. White v. White, 233 So.2d 289 (La.App. 1st Cir.), writ denied, 256 La. 361, 236 So.2d 497 (La.1970).
For the foregoing reasons, the judgment of the Trial Court holding the tax sale from the Sheriff and Ex-Officio Tax Collector of Rapides Parish, Louisiana, to William H. Jamison, husband of Susie Wilson Jamison, dated July 7, 1953, filed and recorded on July 22,1953, in conveyance book 422, page 357, records of Rapides Parish, Louisiana, for 1952 taxes from the public records as null and void is affirmed. Costs on appeal are assessed to the defendants/intervenors John William Jamison, Earl B. Jamison, Mabel Jamison Cryderman, Willow Lee Jamison Floyd, Gloria Dianne Jamison Kelly, Roy C. Jamison and Mack A. Jamison.
AFFIRMED.
GUIDRY, J., concurs and assigns reasons.