THOMPSON, J.
 

 The ultimate question to be decided in this case is whether or not the plaintiffs are entitled to recover an amount which was paid to redeem the defendant’s lands from a tax adjudication to the state, and, if entitled to a judgment, whether the same should be in personem or in rem against the land redeemed.
 

 It is admitted that the lands were adjudicated to the state for delinquent taxes assessed in the name of the defendant as owner, and that plaintiffs redeemed the land and obtained a redemption certificate in favor of •the owner by paying into the state treasury the amount of the taxes of 1923 for which the land was sold with interest, penalties, and costs, the taxes of 1924 with interest, penalties, and costs, and an amount representing the taxes for 1925 and 1926 for which years no taxes were assessed against the lands. The amount so paid for the years 1923 and 1924 was $1,839.29, and for the years 1925 and 1926, $1,858.55.
 

 It is urged in defense of the suit that taxes on immovable property are a charge on the property due and payable only by or out of the property assessed and are not a personal obligation of the owner, and that no person,’ by paying taxes on real estate, could by so doing acquire a personal obligation against the owner of such real estate; that the Constitution of the state prohibits the collection of the taxes due on real estate by judicial proceedings, and that the lands belonged to the state after the tax adjudication, subject to the right of redemption; that there is no law authorizing any assessment of said property after one year from the date of registry of the deed to the state, and that the only amount necessary to redeem said property from the state was the amount of the taxes of 1923 and 1924 with interest, penalties, and costs; that any amount paid for taxes not assessed and not due by said property was simply a wasteful and unnecessary expenditure.
 

 The defense was sustained by the trial judge and plaintiffs’ demand was rejected.
 

 The Bayou Terre Aux Bouefs drainage district embraces only the lands within the limits of St. Bernard parish.
 

 The district was authorized by the taxpayers to issue three sets of bonds and to levy and collect annually an acreage tax on the lands in the district to pay the bonds in principal and interest.
 

 
 *677
 
 The first bond issue was for $60,000, for which a tax of 3 cents per acre was levied; the second issue was for $165,000, for which a tax of 6 cents was levied; and the third issue was for $500,000, for which a tax of 16 cents per acre was levied. The total issue was $725,000, and the total annual acreage tax authorized to be levied was 25 cents per acre.
 

 Of the bonds so issued, $217,000 had been retired or paid at the date of the filing of this suit, leaving outstanding of the three issues $508,000.
 

 It was admitted on the trial that the drainage district was in default in the payment of the amount outstanding of each of the bond issues.
 

 We do not understand that the defendant seriously questions the right of the bondholders to redeem the land from the tax sale. It is urged by way of exception of nonjoinder that all of the bondholders are not joined as plaintiffs, and that the petition and .the proof does not show the particular bondholders petitioners represent.
 

 The petition alleges, and the proof shows, that the three plaintiffs were constituted a committee to represent those bondholders who had deposited their bonds with the Whitney Central Savings Bank & Trust Company as “depositary,” and this committee was vested with a legal title to all of the bonds and coupons which had been or may be deposited with the said bank, and further that said depositors severally transferred and assigned to said committee the bonds and coupons so deposited. The committee was by said agreement fully empowered either in its own name or in the name of the depositors of the bonds in the bank to take or cause to be taken such proceedings in law, in equity, or otherwise as the said committee might deem proper.
 

 The suit was properly brought in the name of the committee under the agreement with the “depositary.”
 

 It was not necessary for all of the bondholders to join in the redemption of the land, and certainly the bondholders who had not become a party to the agreement have no interest in this suit.
 

 The apprehension therefore that the defendant might be called on by other bondholders to pay a second time the amount paid to redeem its lands is patently unfounded.
 

 The defendant does not dispute the fact that the amount paid for the years 1923 and 1924 was and is due and owing by the land. In fact, this is admitted in both the answer and in defendant’s brief. .
 

 But be that as it may, it is no longer a debatable question in this state that a creditor or other person having a right to redeem and does redeem land from a tax sale is sub-rogated by operation of law to the privilege securing the taxes for which the land was sold, notwithstanding statutory provisions authorizing a conventional subrogation.
 

 The latest expression of the court is to be found in Timken v. Wisner Estates, 153 La. 264, 95 So. 711; Abbott v. Heald, 128 La. 718, 55 So. 28.
 

 Indeed, we think this right is fairly deducible from the very statute which authorizes parties other than the tax debtor or owner of the property to make the redemption.
 

 When property is adjudicated to the state for taxes, the title of the state is inchoate. The land is subject to be redeemed as long as the title remains in the state. The tax lien and privilege is not destroyed by the adjudication, but remains dormant until the land is sold by the state or is redeemed for the owner. If the land is sold by the state, it passes to the purchaser unincumbered with tax liens; but if redeemed for the owner, the liens and privileges are revived and become a fixed
 
 *679
 
 charge on the property effective .in favor of the party redeeming.
 

 It is not to he presumed that the state would accept the taxes from a person not the tax debtor or owner of the property and at the same time fail to accord such person the same privilege which the state had against the land.
 

 It might well be that there would be no personal liability against the owner where such owner did not care to pay the taxes on the land and was willing that the state should dispose of it. On the other hand, it might well be argued that if the owner took advantage of the redemption by the creditor and resumed the ownership and possession of the land under the redemption, he would incur the personal obligation of reimbursing the creditor who redeemed the land.
 

 We are not called upon, however, to determine that question in this case, since the plaintiffs, have declared that they will be satisfied with a judgment in rem and that right the defendant concedes in the event the plaintiffs are held to be entitled to. any judgment at all.
 

 With reference to the contention that judicial proceedings cannot be resorted to for the collection of the amount paid to redeem the property, it suffices to say that defendant’s position might be applicable and have a great deal of force if this were a proceeding by the state to enforce the collection of its taxes. But it is obvious that this, is not a suit for taxes within the meaning of the Constitution.
 

 It is an ordinary action to recover from the owner or from his property the amount which had to be paid to the state to release the property from under the tax sale.
 

 The state did not guarantee that the plaintiffs would be repaid the amount the state received from them further than to recognize the plaintiffs’ right on the property.
 

 Nor is the state a party to this suit. The action can in no sense be regarded as one for the collection of taxes in which the constitutional remedy provided for the state is required to be followed. Had the plaintiffs pursued the harsher and more expeditious remedy, the suit no doubt would have been promptly met with an appropriate exception. In the absence of any law to the contrary, and defendant has cited none, the rules governing ordinary actions must be held to apply to an action to be reimbursed the amount paid for the redemption of property from a tax adjudication to the state.
 

 The third and last question appears to be the most relied on by the defendant, and that is whether the plaintiffs are entitled to recover the amount paid the state for the years 1925 and 1926.
 

 The determination of this question involves the proper construction to he placed on the language used in the statute authorizing the redemption.
 

 The argument of defendant is that there was no assessment of the land for the two years and without an assessment there could be no taxes due the state.
 

 It must be remembered that the taxes for these years formed a part of the consideration for the redemption of the lands and without the payment of which the officers of the state would not have allowed the redemption.
 

 If the amounts so exacted and paid were within the meaning and intent of the statute authorizing or permitting the property to be redeemed, then it could hardly be denied that the plaintiffs have a legal right to recover the amount either from the defendant personally or by the seizure and sale of the lands for which the payments were made.
 

 We have decided the question here involved in an opinion this day handed down in the suit of St. Bernard Syndicate v. F. J. Grace Register of State Land Office, ante, p. 666,
 
 *681
 
 125 So. 848, in which we held adversely to the contention of defendant, who was plaintiff in, that suit, that the taxes for 1925 and 1926 were not due because there had been no assessment. What was there said is very pertinent here.
 

 There is no principle of law, equity, or justice which would deny the plaintiffs the legal right and the appropriate remedy by ordinary action to recover for the taxes paid to release to the defendant its large landed estate, which had been sold to the state for failure of defendant to discharge .its civic obligation.
 

 In these circumstances it comes with very poor grace for the defendant to say that the exaction, as a part of the price of redemption of the two years taxes for which the land was not assessed and could not have been assessed, was a wasteful and unnecessary expenditure for which no restitution could be required.
 

 For reasons assigned, the judgment appealed from is set aside, and it is now ordered that the plaintiffs have judgment against the defendant, the St. Bernard Syndicate, for the sum of $3,697.84, with 5 per cent, per annum interest from judicial demand, April 30, 1928, till paid, and all costs of this suit. The principal, interest, and costs of this judgment to be exigible only against the land described in plaintiffs’ petition.